MOORE *v*. CUNNINGHAM.

[87 South. 112, No. 21358.]

1. CONSTITUTIONAL LAW. *Constitutional provision against local laws does not repeal existing laws.*

Section 90, Constitution 1890, which directs that certain matters shall only be provided for by general laws, and, among other things, declares that the legislature shall not pass local laws "relating to stock laws, watercourses, and fences," does not have the retroactive effect of repealing chapter 231 of the Laws of 1882, creating a stock law district in Lowndes county.

2. REPLEVIN. *Party, rightfully impounding animals, may recover possession taken from her by force.*

Replevin is purely a possessory action, and where, under the provisions of chapter 231, Laws 1882, creating a stock law district, a plaintiff has rightfully taken up and impounded stock which were running at large within said district and were trespassing upon her premises, and where the stock were by force wrongfully taken from plaintiff's possession, she may maintain an action of replevin to recover the possession of the stock.

APPEAL from circuit court of Lowndes county.

HON. THOS. B. CARROLL, Judge.

Action by Mrs. S. A. Cunningham against E. S. Moore. From a judgment for plaintiff, defendant appeals. Affirmed.

*Jas. Harrison* and *J. W. Loving,* for appellant.

The appellant must submit that the authorities cited by appellee are not authorities on the propositions involved in this litigation, and will give the reasons therefor.

Section 2064, Code 1892; section 2243, Code 1906, and section 4565, Hemingway's Code, are not authority for the reason that this or these sections attempt to make the law directly opposite to that which section 90 of the Constitution expressly prohibits and hence the same is unconstitu-

tional and are void.   Nor do we consider that *Browning* v. *Matthews,* on the constitutionality of section 2064, Code 1892, or of the local act involved that case or this; that was a litigation involving a local act of 1878 and sections 2060 and 2062 of the Code of 1892, and does not pass upon the question as to the constitutionality of the local act of 1878, or of section 2064 of the Code of 1892.   In fact, the question of the constitutionality was not raised before this court or the court below as far as we are able to discern of the said local act, or of the said section 2064, and had such a question been raised, doubtless the decision would have been different.   We do not conceive that the question of the constitutionality of the local act of 1882 here involved was raised or passed upon in the case of *Anderson* v. *Locke,* 60 Miss. 283, 10 So. 251, but if it had been it would not have been passed on under the Constitution of 1890 as this decision was rendered in 1887.   We are unable to agree with counsel for appellee that *Chidsey* v. *Town of Scranton,* 70 Miss. 449, 12 So. 545, is not authority on this question, for a local law, enacted before the present constitution was involved, and held invalid and abrogated by the Constitution, and as we understand this opinion, clause involved in that case under said section, which is claimed by appellee's counsel not to be a parenthetic clause, was held in this case to be a parenthetic clause, but even if it was not, to hold otherwise, the court held would render this clause superfluous and without any force whatever, for by the first clause of the paragraph, local, private, and special laws, of the class under consideration, are prohibited.   The only effect the clause in parentheses can have is to withdraw exemptions existing under special or local laws, and hence, we must submit that this local act was abrogated by said section 90.

We cannot agree with counsel for appellee that 34 Cyc., page 1390, (111) and *Bond* v. *Griffin,* 22 So. 187, and *Hill et al.* v. *Petty,* 111 Miss. 665, is applicable to the question as to the special interest in this case.   The local act does not give a lien, or the security for a debt, as we under-

stand this act, and hence the kind of special interest existing on the property in the cases cited, and facts in these cases are different from the facts in the case at bar.

In the third section of appellees brief by Messrs Strong and Bush it is stated that Justice Cummings "was not a justice of the peace of supervisors' district in which these cattle were taken up, but he was a justice of the peace in the same stock law district," but this is erroneous; the local act shows that the stock law district is composed of districts four and five, and the declaration itself shows Justice Cummings was in district number two and his own testimony shows the same, as well as all other evidence on this subject in the record. He was not a justice of the peace in districts four and five, and there were other justices of the peace in this stock law district, as admitted and proven in the record and a justice within the district should have been tendered the cattle.

We again respectfully submit that this cause should be reversed and rendered.

*J. H. Frierson,* for appellee.

We will undertake to answer the objections set out in the appellant's brief. Their first objection, is that the appellee was not entitled to the possession of the property when she replevied them after they had been forcibly taken from her possession by the appellant. Our answer to this is that chapter 231 of the Acts of 1882, gives the right. That act also provided for the payment of fifty cents per head for taking up the cattle and twenty-five cents per day for feeding the cattle and provides that the cattle shall not be turned over to the owner unless these amounts are paid. The act is quoted in full in the transcript, pp. 84-86. We most respectfully submit that the statute gives a claim against the cattle for these amounts and the right of the party who takes them up to retain possession till the amount is paid or turn them over with this lien attached to nearest and most convenient justice of the peace

for the enforcement of this lien.     The case of *May* v. *Rockett*, does not apply at all.

This Act of 1882, has been construed by the supreme court in the case of *Anderson* v. *Locke*, 1 So. 251. In that case it was held that the act was constitutional. That case, however, was decided prior to the Constitution of 1890. It is claimed by the appellant that this Act of 1882 was abrogated by subdivision "q" of section 90, Constitution of 1890. Section 90 of the constitution provides that no local, private or special law shall be enacted in certain enumerated cases. Subdivision (q) reads: relating to stock, watercourses and fences. To sustain the contention of appellant that the said Act of 1882 was abrogated, counsel cite the case of *Chidsey* v. *The Town of Scranton*, 70 Miss. 449, 12 So. 545. The Chidsey case was on subdivision (k) of section 90, Constitution of 1890, which reads as follows:

(k) Exempting any person from jury, road or other civil duties, and no person shall be exempt therefrom by force of any local or private law. Chidsey claimed exemption from road taxes or duty under an Act of 1886, which declares that the members to the number of fifty of Scranton Fire Company, No. 1, in the town of Scranton, Jackson county, Mississippi, be and are hereby exempt from road taxes or duty. .

Counsel for appellant contends that section 90 abrogated all local laws then in operation on all points enumerated in subdivisions under said section 90. The Chidsey case is decided on the clause of subdivision (k) which is in parenthesis and reads: "(and no person shall be exempt therefrom by force of any local or private law.)" In other words this clause in parenthesis was the deciding point in that case.

In reference to the abrogation of the existing local laws at the time of the passage of the Constitution of 1890, we reply that repeals by implication are not favored. This proposition of law is so well established that citation is not necessary. Furthermore section 4565 of Hemingway's

Code, section 2243 of the Code of 1906, which is the last section under chapter under fences and stock laws, reads as follows:

"Crops without fences or with certain kind of fences shall remain in force until altered, amended, repealed on petition or vote under provisions of this chapter. In the case of *Browning* v. *Matthews, Sheriff*, 18 So. 658, the court passed on an Act of 1878, which was a local act providing a scheme whereby any part or the whole of the counties of Monroe, Clay, Chicasaw, Oktibbeha, Lowndes, Panola, LaFayette, De Soto and Copiah, might be put into stock law districts. That case was before the supreme court in 1895 and gives no intimation that either the court or the counsel in the case had any idea that section 90 of the Constitution of 1890 had abrogated or repealed any local stock law."

Counsel for the appellant claimed that the demurrer should have been sustained because the declaration did not make any allegations that would entitle the appellee to the immediate possession of the cattle. The declaration alleges, plaintiff further avers that she has a special interest in said cattle to the extent of one thousand twenty-nine dollars and that she is entitled to the immediate possession of the same.

Counsel for appellant next contends that the appellee failed to comply with the act, chapter 231 of the Acts of 1882; they say the act provides that the cattle shall be taken to the nearest and most convenient justice of the peace within five days. Counsel have misquoted the act; it provides that the owner of the cattle shall be notified without delay and if the owner shall not, within five days from the time such notice be given or diligent inquiry made, pay the amount, etc., the animal shall be delivered to the "nearest and most convenient justice of the peace."

Counsel next contends that the cattle were taken out of the county by the appellee. The evidence shows that the appellee owned land in both counties. That the cattle were taken up in Lowndes county and were hurdled in

Noxubee county at night "just across the line" but that they were brought back and forward across the line every day.

The suit was not for the forty-three head of cattle but for the twenty-nine head of cattle which the appellee was seeking to deliver to the justice, of the peace and which was seized *vi et armis* by appellant. We respectfully submit that the jury was authorized to return the verdict which they did return. The court was correct in entering the judgment which it did enter and the lower court ruled correctly throughout the entire case and the judgment as it now stands, should be affirmed.

W. H. Cook, J., delivered the opinion of the court.

Mrs S. A. Cunningham, appellee, instituted a replevin suit in the circuit court of Lowndes county, seeking to recover the possession of twenty-nine head of cattle, which were alleged to have been wrongfully taken from her possession by appellant, defendant below.

The facts reflected in this record are substantially as follows:

Appellant and appellee owned adjoining farms, which were located within the confines of a certain stock law district in Lowndes county, which district had been created by chapter 231 of the Laws of 1882. Section 2 and 3 of this act provide:

"Sec. 2. Be it further enacted, that if any animal or animals shall be found loose or trespassing upon the fields, or cultivated land of any person other than the owner of the animal or animals, it shall be lawful for any one interested to take up and confine all animals so found, and the owner of such animal or animals, shall pay to the person taking them up, the sum of fifty cents per head for each horse, mule or cow, and the sum of twenty-five cents per head for each hog, sheep or goat, and the further sum of twenty-five cents per head per day for feeding the same, and the owner shall not be allowed to recover or repossess himself of any such animal or animals until said sum shall be first fully paid.

"Sec. 3.   Be it further enacted, that any person who takes or confines any animal, under provisions of this act, shall, without delay, give notice of the taking up and confinement to the owner, if known or can be ascertained upon diligent inquiry, and if the owner shall not within five days from time such notice be given or diligent inquiry made, pay the amount due according to rate specified in preceding section, and take possession of his animal or animals, it shall be the duty of the person who took up and confined the same, to deliver it promptly to the nearest or most convenient justice of peace, who shall sell it at public auction for cash, after giving five days' notice, by posting written or printed notices, in three public places of time and place of sale, and shall give to purchaser a bill of sale, which, in absence of fraud, shall vest in purchaser a perfect title to animal or animals bought by him; and the justice shall be allowed out of proceeds of sale, fifty cents per head for all horses, mules and cattle, and twenty-five cents per head for all hogs, sheep and goats sold by him as aforesaid; and he shall pay out of proceeds of sale, to person who took up and confined the animal or animals sold, the amount due him, as provided in foregoing section, and balance of proceeds he shall pay to county treasurer for use of owner; provided, the owner call for the same within twelve months from day of sale, and in case of failure so to do, the same shall be paid into school fund of said county."

Appellant owned a large number of cattle which were pastured on his premises, and which were permitted to escape therefrom, and they committed frequent depredations upon the crops of appellee.    After numerous requests to appellant to keep his cattle up, appellee finally took up and impounded about forty head of them, and then notified appellant of that fact.   Appellant promised to come out and look after them, and finally did go and inspect the cattle, but did not arrange to pay the damage or move the cattle.   Appellee's farm extended into Noxubee county, and while the cattle were taken up in Lowndes

county, they were driven across the line into Noxubee coun-
ty to be placed in an inclosure. Finally appellee went
before a justice of the peace in Noxubee county for the
purpose of instituting proceedings to sell 'the cattle for
the damages accrued, but, upon being advised that the
justice of the peace in Noxubee county was without juris-
diction in the matter, she went to Justice Hinkle, in
Lowndes county. This justice agreed to advertise the
cattle, but requested that the matter be delayed until he
could talk to appellant, Moore. After talking to appel-
lant, this justice of the peace suddenly resigned—for what
reason does not appear. There being no other justice in
supervisor's district, No. 4, appellee then went before Jus-
tice Cummings, of Columbus, and he thereupon adver-
tised the cattle for sale, and instructed appellee to bring
them to Columbus on the day of sale. On account of the
severity of the winter several of the cattle had died, and
there were only twenty-nine advertised for sale, and there
is much tstimony in the record upon the question as to
whether appellee had properly fed and sheltered them.
On the day of the sale the cattle were being driven to
Columbus, and when near Columbus, and when passing
certain lands of appellant, he and his son suddenly con-
fronted the negroes who were driving the cattle, and or-
dered them to turn them into his pasture or field and
to unload the feed which they had on their wagons. The
appellant and his son were armed with a shotgun and
rifle, and naturally these negroes promptly complied with
appellant's demand. When the son of appellee arrived
on the scene, he found the cattle penned in appellant's
field, the feed unloaded, some of the negroes gone. and
appellant, armed with a deadly weapon, guarding the cat-
tle. Upon his refusal to surrender the possession of them,
appellee's son proceeded to Columbus, and instituted this
suit in the name of appellee to recover the possession of
the cattle.

The controlling question presented by this record is
whether the special or local act of 1882 creating this stock

law district was abrogated by section 90 of the Constitution of 1890. Section 90 of the Constitution declares that —"The Legislature shall not pass local, private, or special laws in any of the following enumerated cases, but such matters shall be provided for only by general laws, viz.: (a) Granting divorces; . . . (k) exempting any person from jury, road, or other civil duty (and no person shall be exempted therefrom by force of any local or private law); . . . (q) relating to stock laws, watercourses, and fences."

We have been unable to find, and counsel have failed to cite, any case where this court has passed upon the exact question here presented, but it has been passed upon by the courts of several other states in construing similar constitutional provisions.

Appellant relies upon the case of *Chidsey* v. *Town of Scranton*, 70 Miss. 449, 12 So. 545, as authority for the contention that this special act has been abrogated by paragraph (q) of this constitutional provision. The *Chidsey Case, supra,* arose under paragraph (k), which is herein set out in full, and the court there used the following language:

"It is sought to maintain the exemption by the rule of construction that repeals by implication are not favored, and by a criticism of the structure of the parenthetical clause of paragraph (k), above noted. It is said in argument that the clause does not declare that no one shall be exempt from the duties referred to, but only that no one shall be exempted—meaning that no one shall claim exemption by reason of any special or local law thereafter enacted. This construction, if adopted, would render the clause superfluous, and without any force whatever, for by the first clause of the paragraph local, private, and special laws of the class under consideration are prohibited; the only effect the clause in parenthesis can have is to withdraw exemptions existing under special or local laws."

It is earnestly contended that the parenthetic clause in paragraph (k) added nothing to the subdivision and took nothing from it, and that an entire omission of the parenthetic clause would not affect the construction of the subdivision, and that the *Chidsey Case, supra,* so held. We do not so understand this case. On the contrary, from the foregoing quotation from this case, it clearly appears to us that this decision, holding that exemptions previously granted by special or local laws were withdrawn, is based entirely upon that portion of the paragraph which appears within the parenthesis. Although this clause is written in parenthesis, it is not in fact parenthetical, and the Chidsey Case has construed it as a substantive part of the subdivision, the effect of which was to abrogate exemptions already existing under special or local laws passed prior to its adoption.

In Cyc., vol. 36, p. 990, it is stated as the general rule for construction of constitutional prohibitions on special or local legislation that, provisions of state Constitutions prohibiting the enactment of special laws where a general law may be applicable are not retroactive so as to annul special laws already in force. In support of the text cases are cited from California, Colorado, Illinois, Kansas, Kentucky, Maryland, New York, and South Dakota.

In *Nevada School District* v. *Shoecraft,* 88 Cal. 372, 26 Pac. 211, the court in passing upon a constitutional provision similar' to ours, used the following language:

"The provision of the present Constitution that the legislature shall not pass local or special laws in certain cases applies to future and not to past legislation."

Also in *Board of Education* v. *Hyatt,* 152 Cal. 515, 93 Pac. 117, it is said:

"The act, having been. passed before the adoption of the Constitution of 1879, was not affected by the restrictions contained in that instrument prohibiting the passing of local or special laws."

In *Huer* v. *City of Central,* 14 Colo. 71, 23 Pac. 323; *Covington* v. *City of East St. Louis,* 78 Ill. 548; *State*

v. *Thompson,* 2 Kan. 432, *Smith.* v. *Simmons,* 129 Ky. 93, 110 S. W. 336; *New Central Coal Co.* v. *George's Creek Coal & Iron Co.,* 37 Md. 537, and *People* v. *B., F. & C. T. Ry Co.,* 89 N. Y. 75, the courts of those states have construed constitutional provisions similar to section 90 of our present Constitution, and held that, local and special laws enacted prior to the adoption of the constitutional provision under consideration were not abrogated thereby.

We conclude that the constitutional provision here under review was not retroactive, and that chapter 231 of the Laws of 1882 was not abrogated by section 90 of the Constitution, and since this act creating the stock law district is still in full force and effect, it follows that appellee was clearly within her legal rights when she took up and impounded the cattle found trespassing upon her premises and crops.

It is further contended on behalf of appellant that, since there was a justice of the peace residing within the stock law district, the justice of the peace at Columbus was without jurisdiction of the proceedings seeking to sell the cattle for the statutory damages accrued. It appears that the proceedings were instituted before a justice of the peace at Columbus in an attempt to comply with the provision of the act creating the district which required the cattle to be carried before the nearest justice of the peace. The evidence is not clear as to the location of the justice within the district, and there is some evidence that Justice Cummings, of Columbus, was the nearest justice of the peace. However, the legality of the proceedings before the justice of the peace is not here involved. This is solely a replevin suit to recover the possession of cattle alleged to have been wrongfully taken from the possession of appellee. Replevin is purely a possessory action, and the cattle were rightfully in the possession of appellee at the time they were taken from her by appellant and his son by the use of a shotgun and a rifle. Whatever rights appellant may have had against appellee, he cannot maintain them by any such strong-arm methods as were here used,

and he should have resorted to the process of the courts to assert them. The appellee was rightfully in possession of the cattle when they were taken from her by appellant, she was entitled to recover possession of them, and we find no error in this record which would warrant a reversal of the judgment of the lower court.

*Affirmed.*