## In re FRED'S DOLLAR STORE OF HERNANDO, INC.

**Bankruptcy No. E84–20153.**

United States Bankruptcy Court, N.D. Mississippi.

Nov. 20, 1984.

James R. Mozingo, Stennett, Wilkinson & Ward, Jackson, Miss., for Fred's Dollar Store of Hernando, Inc.

C. York Craig, Jr., and Neil Olack, Watkins, Ludlam & Stennis, Jackson, Miss., and Thomas J. Gallo, Harkleroad & Hardy, Atlanta, Ga., for Fred's Finance Co., Inc.

## MEMORANDUM OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

CAME ON for consideration the motion to dismiss or, in the alternative, to convert to a case under Chapter 7, filed in the

above referenced proceeding by Fred's Finance Company, Inc., hereinafter referred to as Fred's Finance Company and/or Movant; as well as, the motion for authorization to sell property free and clear of lien, and for authorization to use cash collateral filed by the Debtor herein, Fred's Dollar Store of Hernando, Inc., hereinafter referred to as Fred's Dollar Store and/or Debtor; all parties being represented by their respective attorneys of record; on proof in Open Court; and the Court having heard and considered same, finds as follows, to-wit:

## I.

On July 14, 1983, Fred's Dollar Store executed a promissory note in favor of Fred's Finance Company in the original principal sum of $200,000.00, payable on demand, or absent demand, payable on May 31, 1988. The promissory note was secured by all merchandise inventory, all store fixtures, furniture and equipment plus any additions, replacements, or substitutions owned by Fred's Dollar Store. The lien encumbering the aforementioned items was perfected by the filing of a Uniform Commercial Code Financing Statement. (The promissory note, security agreement, and financing statement were introduced collectively as Debtor's Exhibit 1.)

On July 20, 1983, Fred's Dollar Store entered into a franchise agreement with Baddour, Inc., the parent corporation of Fred's Finance Company, which permitted the use of the trade name, "Fred's", as well as, encompassed the general plan of management for the business operations. (See Movant's Exhibit 8.)

Fred's Dollar Store was incorporated in 1969 and its directors and officers throughout the course of its existence were Fred T. "Tommy" Smith, Julian E. Smith, and Bobby J. Lakey, each owning a one-third interest in the corporate stock. Both the Smiths, who are brothers, were long time employees of Baddour, Inc., or were affiliated with that corporation or a related entity in some capacity.

In February, 1984, an offer was made by a representative of Baddour, Inc., to purchase the corporate stock of Fred's Dollar Store, owned by Julian E. Smith and Bobby J. Lakey, for the sum of $100,000.00, to be paid to each. Apparently, no such offer was tendered to Fred T. Smith for his stock or that owned by members of his family which aggregated the remaining one-third interest. When Julian Smith refused the offer on February 27, 1984, his employment with Baddour, Inc., which had extended for thirty-five years, was promptly terminated.

On March 1, 1984, Paul M. Baddour, representing both Baddour, Inc., and Fred's Finance Company, made written demand on Fred's Dollar Store for full payment within thirty days of the balance due under the aforementioned $200,000.00 promissory note. (See Movant's Exhibit 2.) Shortly thereafter, Baddour, Inc., informed Fred's Dollar Store that its franchise agreement was to be cancelled effective December 31, 1984. The original thirty day repayment period was extended on at least one occasion by Fred's Finance Company for an additional thirty days to permit the principals in Fred's Dollar Store an opportunity to secure substitute financing. Although Fred's Dollar Store owns substantial assets, i.e., land and a store building, having an unencumbered fair market value of approximately $470,000.00 (See Debtor's Exhibit 2), the refinancing transaction could not be consummated.

Subsequently, a complaint for replevin was filed in the Circuit Court of Desoto County, Mississippi, under Cause No. 9069, styled *Fred's Finance Company v. Fred's Dollar Store of Hernando, Inc.* In this case, an *agreed judgment* was entered on July 27, 1984, which purported to adjudicate several matters, at least two of which are now critical issues in this bankruptcy litigation, to-wit:

a. The agreed judgment provided that the plaintiff have judgment against the defendant in the sum of $213,317.02, representing the aforementioned promissory

note indebtedness of $200,000.00, plus interest through August 13, 1984.

b. The judgment recited that the plaintiff was entitled on or after August 13, 1984, to take possession of all merchandise inventory, and all store fixtures, furniture and equipment *necessary to satisfy the judgment.* These particular items of property, which served as collateral for the note indebtedness, were to be left on the premises of Fred's Dollar Store until August 13, 1984, conceivably so that an appraisal could be made by both parties.

c. The judgment recited *"that the plaintiff shall have title* and the parties herein shall have reasonable access to all merchandise, inventory, and all store fixtures, furniture and equipment to conduct inventory on or before August 13, 1984,"*.* (emphasis added)

d. The judgment provided that Fred's Dollar Store would not subject the property to any other liens or encumbrances, as well as, that it would not remove the property from the premises.

## II.

A replevin action brought pursuant to § 11–37–101, et seq., Mississippi Code of 1972, as amended, is a statutory proceeding which is purely a possessory action and not a suit for monetary damages. *Robinson v. Friendly Finance Co. of Biloxi, Inc.,* 241 Miss. 239, 130 So.2d 256 (1961), *General Motors Acceptance Corp. v. Fairley,* 359 So.2d 1386 (Miss.—1978), *Scarborough v. Lucus,* 119 Miss. 128, 80 So. 521 (1919), and *Moore v. Cunningham,* 124 Miss. 537, 87 So. 112 (1921).

In *Associates Discount Corp. v. Slayton,* 226 Miss. 778, 86 So.2d 509 (1956), the Court reiterated the premise that an action of replevin is possessory only, and stated that the lienholder was required to deal with the property only as security for the payment of the related indebtedness. The general theory applicable to a judgment in a replevin action is that the judgment should be for the return or possession of the property or the value of the interest or lien. *Road Material and Equipment Company, Inc. v. McGowan,* 229 Miss. 611, 91 So.2d 554 (1956).

However, as noted hereinabove, the Desoto County Circuit Court judgment was entered by the consent of both parties. *Road Material and Equipment Company, Inc.,* supra, speaks to this particular issue, as follows:

"Because the gist of a replevin action is possessory and damages are only incidental, it is well established that, *in the absence of a consent judgment agreed upon by both parties,* a judgment in replevin cannot be for debt, but must be in the alternative. *Citing cases."* (emphasis added)

"In summary, the 1951 judgment of the circuit court is void on its face insofar as it purports to give appellant, plaintiff below, a personal judgment for debt against appellee. That part of the judgment was beyond the power of the circuit court to render in a replevin suit, in the absence of an agreement of the parties, which the 1951 judgment by default affirmatively shows did not exist."

*Road Material Company, Inc. v. McGowan,* supra, 91 So.2d at pages 556 and 557.

A subsequent case, *Deposit Guaranty National Bank v. Ellzey,* 222 So.2d 680 (Miss.—1969), quotes precisely the language of *Road Material and Equipment Company, Inc.,* to the effect that in the absence of a consent judgment, agreed to by both parties, a judgment in replevin cannot be for debt. The following language is pertinent:

"The judgment in a replevin action must be in the alternative: either for possession of the property replevied and damages for a wrongful detention; or the value of the property if possession cannot be restored...."

*Deposit Guaranty National Bank v. Ellzey,* supra, at pages 681 and 682.

From reading the above referenced cases, this Court is satisfied that since the agreed judgment was entered by consent, the fixing of the indebtedness therein is

appropriate. However, this Court is not convinced that the language "that the plaintiff shall have title", without further explanation or words of conveyance, effectively passes title to the collateral from Fred's Dollar Store to Fred's Finance Company. The agreed judgment also leaves the implication that not necessarily all of the merchandise, etc., was to be replevied by Fred's Finance Company—only that necessary to satisfy the judgment. Additionally, while there is a faint inference that ownership of the collateral passed to Fred's Finance Company, the Debtor is admonished at the same time not to subject this property to any other liens. To say the least, this language represents a legal contradiction which cannot be easily reconciled.

Consequently, this Court finds that, because of the ambiguity in the language found in the agreed judgment, there was no effective consent by the Debtor to the conveyance of title to Fred's Finance Company.

█ The jurisdiction of the circuit court is obviously limited in a replevin cause of action, and as such, there can be no passage of title absent a clear agreement between the parties. The words in the judgment, although placed there by consent, are insufficient to convey title to anything, and this Court will not engraft remedies in this judgment which are not precisely intended.

Concerning this same issue, the Court is compelled to review the temporary restraining order issued subsequently by the Circuit Court of Desoto County. In the temporary restraining order, there is language to the effect that Fred's Dollar Store would lose its statutory right of redemption, granted by § 75-9-506, Mississippi Code of 1972, as amended, as to the merchandise inventory, etc., should the order not be entered. This Code section provides as follows, to-wit:

§ 75-9-506. Debtor's rights to redeem collateral.

At any time before the secured party has disposed of collateral or entered into a contract for its disposition under Section 9-504 [§ 75-9-504] or before the obligation has been discharged under Section 9-505(2) [§ 75-9-505(2)] the debtor or any other secured party may after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral then due or past due (excluding any sums that would not then be due except for an acceleration provision) as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses.

If Fred's Dollar Store had contemplated that title had passed by virtue of the agreed judgment, there would have been no reason to be concerned about the statutory right of redemption granted by the above quoted Code section. Had the Circuit Judge considered that title had passed earlier, he likely would not have entered the temporary restraining order protecting the right of redemption. Simply stated, had title passed by virtue of the first judgment, there would have been no right of redemption remaining in Fred's Dollar Store.

█ Therefore, the Court finds that title to the merchandise inventory, furniture, fixtures, and equipment remains at this time in the Debtor, Fred's Dollar Store, and constitutes property of the bankrupt estate as contemplated by 11 U.S.C. § 541.

### III.

The uncontradicted testimony at the hearing on the motions was to the effect that the retail value of the merchandise, which was calculated following inventories by both parties, exceeded the sum of $400,-000.00. The pleadings filed by Fred's Dollar Store indicated that the furniture, fixtures, and equipment had a value of between $50,000.00, and $75,000.00. As mentioned hereinabove, the appraisal of the

land and building prepared by Barry W. Bridgforth indicated a value of $470,000.00. The summary of debts and property filed by Fred's Dollar Store in its bankruptcy schedules indicated total assets in the sum of $957,252.45, and total debts in the sum of $277,151.21. Based on the testimony of Fred T. Smith, who indicated that he hoped to realize approximately $235,000.00, from a liquidation sale of the merchandise, the Court is of the opinion that the value of the total assets is somewhat overstated, but there is no doubt in the Court's mind that the amount of total assets substantially exceed the amount of total liabilities. See *Cissell v. First National Bank of Cincinnati,* 476 F.Supp. 474 (D.C.Ohio—1979), *In Re Camp Rockhill, Inc.,* 12 B.R. 829 (Bkrtcy.Pa.—1981), and *In Re National Buy-Rite, Inc.,* 7 B.R. 407 (Bkrtcy.Ga.—1980).

At the hearing, the Court inquired as to whether the judgment rendered on July 27, 1984, afforded Fred's Finance Company additional security for the promissory note indebtedness, which as discussed hereinabove, has legitimately been reduced to a judgment lien by the consent of the parties in the sum of $213,217.02. The initial response by Debtor's counsel was that any lien created by the agreed judgment would constitute a preferential transfer as contemplated by 11 U.S.C. § 547(b). This section provides as follows, to-wit:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made;

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

■ Under most circumstances, a judgment lien, enrolled within the ninety day preference period, which encumbers properties in which the debtor owns an equity interest, would constitute a preferential transfer. However, in this case the Debtor is not insolvent as clearly evidenced by the various appraisals and the bankruptcy schedules. Consequently, the test of § 547(b)(3), cannot be met, and this Court concludes that insofar as the judgment is concerned that no preferential transfer has occurred. This conclusion is inevitable even though Fred's Finance Company, through the entry of the consent judgment, will conceivably receive more than if this case were a liquidation proceeding under Chapter 7. If *all* elements of § 547(b) cannot be met, the judgment lien, which has attached to the equity of Fred's Dollar Store in the land and building, cannot be avoided by this Code section.

### IV.

■ Due to the fact that Fred's Finance Company is more than adequately protected for the full amount of its claim against Fred's Dollar Store, considering the judgment lien which now encumbers the land and building, and which cannot be avoided, as a preferential transfer, this Court is of the opinion that Fred's Dollar Store should be permitted to conduct the liquidation sale of its inventory. The Court feels that such a sale by the Debtor will produce more favorable results at less expense. Having reached the decision that the judgment lien

extends to the land and building, the conclusion becomes inescapable that Fred's Dollar Store will have everything to gain by obtaining the greatest sales proceeds at the least cost. Fred's Finance Company has no reason to complain in view of the fact that its interest is reasonably protected regardless. However, this Court will permit Fred's Finance Company to closely monitor the sale and would direct that the officers, directors, and employees of Fred's Dollar Store cooperate to the fullest extent necessary so that this monitoring activity might be undertaken. At the same time, any persons affiliated in any capacity with Fred's Finance Company are directed not to interfere with the conduct of the sale or impede the sale in any manner whatsoever.

An Order will be entered consistent with this Opinion.