**In re IMF SALES ASSOCIATES, INC., Debtor.**

**IMF SALES ASSOCIATES, INC., Plaintiff,**

**v.**

**RACAL–VADIC INFORMATION SYSTEMS, INC., Defendant.**

**Bankruptcy No. 87–10582–HL.
Adv. No. 87–1285.**

United States Bankruptcy Court,
D. Massachusetts.

March 10, 1988.

---

David Nickless, Nickless & Phillips, Fitchburg, Mass., for debtor.

Louis S. Robin, Foley, Hoag & Eliot, Boston, Mass., for Racal.

## MEMORANDUM ON ALLOWANCE OF MOTION FOR SUMMARY JUDGMENT

HAROLD LAVIEN, Bankruptcy Judge.

IMF Sales Associates ("IMF") filed a five-count complaint against Racal–Vadic Information Systems, Inc.[1] ("Racal"). IMF has since withdrawn Count I (preliminary injunction) and Count III (contempt) of its complaint. Accordingly, the remaining causes of action are breach of contract (Count II), unfair trade practices (Count IV), and avoidance of preferential transfers (Count V). Racal filed a Motion for Summary Judgment on January 27, 1988, on which the Court heard argument, January 28, 1988. Both IMF and Racal have filed memorandum and affidavits.

■ IMF contends in Count V that it paid $90,963.83 to Racal during the 90 days before the bankruptcy to reduce antecedent debt while it was insolvent. The allegations, if proven true, would allow the debtor to recover the $90,963.83 as a preferential transfer to Racal. 11 U.S.C. § 547.[2]

---

1. The correct name of the corporation is Racal Information Systems, Inc.

2. 11 U.S.C. § 547 provides
 (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
  (1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) *made while the debtor was insolvent;*
 (4) made—
 (A) on or within 90 days before the date of the filing of the petition; or

IMF cannot avoid the payment to Racal unless it can show it was insolvent during the 90 days prior to the filing of its petition. In its memorandum, Racal argues that this Court has conclusively disposed of the issues of insolvency in *IMF Sales Associates, Inc. v. Michael J. Fosko,* slip opinion Adv.Pro. No. A87–1230–HAL (1987). In *Fosko,* the court found the debtor to be solvent for the three years prior to filing its bankruptcy petition. IMF contends *Fosko* is not conclusive because the debtor did not offer any evidence to prove that it was insolvent the three months prior to the filing of the bankruptcy petition and because it is being appealed. The Court has carefully examined the basis of Count V, the preference action, and the record in *Fosko.* Principles of collateral estoppel completely bar the relitigation of the insolvency issue. A court finding that collateral estoppel applies requires three determinations: (1) the relationship between the parties allows the application of collateral estoppel; (2) identity of issues; and, (3) an entry of a final judgment on the merits on the first action. *Massachusetts Hospital Association v. Harris,* 500 F.Supp. 1270 (D.Mass.1980); *Matter of Wilcher,* 56 B.R. 428 (Bankr.N.D.Ill.1985).

Bankruptcy Judge Robert D. Martin has masterfully and concisely explained the relationship of parties needed for a finding of collateral estoppel.

> Under the doctrine of collateral estoppel any issue which was previously decided and was necessary to the prior judgment may not be relitigated by a party to the first action. Since the demise of the doctrine of mutuality, collateral estoppel may be used defensively by one not party to a prior action against the party (and those in privity who lost on the issues decided in the first action). *See Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). In appropriate circumstances collateral estoppel may also be applied offensively against a party or his privies who lost on an issue in prior litigation. *Warren v.*

*McCall, supra* [709 F.2d 1183 (1983)] at 1185; *see Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

> In order to assert the doctrine of collateral estoppel it must be established that the party sought to be bound (or his privies) had a full and fair opportunity to litigate the issues in question in the prior litigation. *See id.* at 328, 99 S.Ct. at 650; *see also Blonder–Tongue Laboratories, supra.*

*In re Wilcher,* 56 B.R. at 436.

It is clear that Racal is asserting collateral estoppel in a permissible manner.

IMF had a full and fair opportunity and every incentive to show it was insolvent during the 90 days before the bankruptcy filing, April 17, 1987. *Fosko* was a fraudulent conveyance action where the debtor had to establish insolvency for a period of time that included the entire time period of preferences. 11 U.S.C. §§ 547, 548. The debtor's failure to present evidence to show it was insolvent during the preference period has no legal effect, since the essential requirement for collateral estoppel is that it had the opportunity to offer such evidence which would have been material to the case it was then presenting. *Akron Presform Mold Company v. McNeil Corporation,* 496 F.2d 230 (1974). J. Moore, A Vestel *Moore's Manual: Federal Practice and Procedure* § 30.05(1) n. 14 (1987). It was a material part of the *Fosko* case since some $15,000 of the fraudulent conveyance claim occurred within the 90–day period. To allow this second bite at the apple would encourage counsel to withhold complete preparation and presentation in a small original trial to test the waters if it could later pursue a second related claim, regardless of the outcome of the first action, and undo all that collateral estoppel was meant to end.

There is no need for the Court to reach the merits of this issue. The Court, however, is disturbed by the debtor's actions and cannot let them pass without comment.

(B) between ninety days and one year before the date of the filing of the petition, if

such creditor at the time of such transfer was an insider; (emphasis added).

The debtor has filed schedules of assets and liabilities as of the date of the filing of the bankruptcy petition, under the penalty of perjury. Submitting false schedules is a serious bankruptcy crime that can result in a denial of a discharge, 11 U.S.C. § 727(a)(4); *Commercial Banking Corporation v. Martel,* 123 F.2d 846 (1941) and criminal prosecution. *Metheany v. U.S.,* 365 F.2d 90 (9th Cir.1966). The schedules show that the debtor had an equity of $128,360.60 the date it filed for bankruptcy. Racal has sought to show the debtor was solvent on the basis of the schedules and retrojecting the last three months' results. *Hassan v. Middlesex County National Bank,* 333 F.2d 838 (1st Cir.1964).[3]

The debtor seeks to show it was insolvent on the date of the petition via the affidavits of its president, Thompson D. Irwin, and appraiser, Paul E. Saperstein, signed under the penalty of perjury. The two affidavits consist of Mr. Saperstein's post-petition valuation of IMF assets and of Mr. Irwin reporting the results of post-petition sales.[4] Despite the passage of eleven months since the filing, the debtor has not disavowed its schedules by moving to amend, but simply seeks to discredit its own oath for the limited purpose of this proceeding. Presumably, the pre and post creditors and others are still intended to rely on the valuations set forth in the schedules.

Debtors and trustees have been found insolvent in bankruptcy courts despite schedules showing solvency when the case was a Chapter 7 or a self-liquidating Chapter 11.[5] There are very sound reasons for allowing a debtor or trustee to challenge the schedules once it is clear the debtor will not survive as a business after confirmation. The creditors are seeking to protect themselves against a self serving statement of the debtor. It is quite another thing for a debtor seeking additional credit to cavalierly mislead others by overstating values in Chapter 11 schedules, when it suits his purpose, and then saying "I don't mean it", when it is to his advantage to deprecate his own oath while still holding them out as truthful to the rest of the world. This is not a trustee or third party challenging the schedules, this is the debtor speaking out of both sides of his mouth at the same time. The Court cannot allow such behavior if the bankruptcy process is to retain its integrity.

The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." [In re] *Mascolo,* 505 F.2d [274] at 278 (1st Cir.). Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight. *See In re Tabibian,* 289 F.2d 793, 797 (2d Cir.1961); *In re Shebel,* 54 B.R. [199] at 202 (Bankr. Vt.1985). *In re Tully,* 818 F.2d 106, 111 (1st Cir. 1987).

IMF contends that the court's decision in *Fosko* is not final for purposes of collateral

---

**3.** The debtor receives a presumption of insolvency in a preference action. 11 U.S.C. § 547(f). Racal has rebutted the presumption by offering the schedules which show the debtor was solvent. *In re Zuni,* 6 B.R. 449 (Bankr. D.New Mexico 1980). This, by itself, does not end the inquiry because schedules, while being probative, are not dispositive evidence that the debtor was solvent or insolvent. *Braunstein v. Massachusetts Bank & Trust Co.,* 443 F.2d 1281, 1283 (1st Cir.1971).

**4.** The affidavits are based on post-petition valuations and post-petition sales without showing that there was no change of value in the goods since the filing of the petition. *McClung–Logan Equipment v. Friedman,* 195 F.2d 516 (4th Cir. 1952). This is especially true with computers and its accessories, which is the product that IMF sold. The affidavits were incomplete and would have been of minimal assistance to the court.

**5.** *In re Fred's Dollar Store of Hernando,* 44 B.R. 491 (Bankr.N.D.Miss.1984) (court allowed Chapter 11 debtor in a liquidation plan to attach its schedules). *In re Zuni,* 6 B.R. 449 (Bankr. D.New Mexico 1980) (Chapter 7 debtor allowed to attach its schedules).

estoppel because the decision is on appeal. This is contrary to well established law. "[I]n the federal courts the general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed—detract from its decisiveness and finality." *Huron Corp. v. Lincoln Co.,* 312 U.S. 183, 184, 61 S.Ct. 513, 514, 85 L.Ed. 725 (1941). More specifically, "[T]he federal rule is that pendency of an appeal does not suspend the operation of a final judgment for purposes of collateral estoppel, except where appellate review constitutes a trial de novo." *Nixon v. Ricky,* 513 F.2d 430, 438, n. 75 (D.C.Cir.1975). The *Fosko* adversary was a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H) and is not subject to de novo appellate review.

The debtor has alleged that Racal has breached a contract (Count II) and committed unfair trade practices (Count IV). Before the Court can reach the factual issues in these two counts, it feels it should discuss which type of issues of fact necessitate the granting of a Motion for Summary Judgment.

The Court will grant a Motion for Summary Judgment only if the non-moving party cannot show a genuine issue of fact. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, the judge's function is not to weigh the veracity of the evidence, but to determine if there is potentially sufficient evidence raised in the plaintiff's pleadings so that the Court could find in favor of the non-moving party.

It is not sufficient for the non-moving party to make a colorable claim: "Rule 56(c) of the Federal Rules of Civil Procedure ... provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment: the requirement is that there be no genuine issue of material fact." *Anderson,* 106 S.Ct. at 2510.

The non-moving party must provide the Court with enough evidence to show "... there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 106 S.Ct., at 2511. "The mere existence of a scintila of evidence in support of the plaintiff's position will be insufficient." *Anderson,* 106 S.Ct., at 2512. Lastly, "where the record taken as a whole could not lead to a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, at 1356, 89 L.Ed.2d 538 (1986).

■ The debtor has not even presented a scintila of evidence, let alone enough, if believed, for a trier of fact to find for the non-moving party. No copy of the distribution agreement nor of the small orders policy, if there is a copy, has been presented to the Court by affidavit or otherwise. Nor has the debtor provided affidavits even alleging specific instances of Racal's misdeeds, despite the Court specifically allowing IMF leave to file affidavits on this issue at the January 28, 1988 hearing. Accepting as provable the sole specific allegation, namely that the defendant orally and unilaterally agreed to refer any orders of less than 25 units to its distributors, no facts are alleged indicating a breach of that undertaking. The plaintiff's affidavits, despite the Court having expressly given it time to do so, fail to specify any incident of a breach of this duty prior to the date of filing of the plaintiff's bankruptcy petition. Which date the plaintiff, by rejecting the distributorship agreement, was considered to have breached the said agreement, and relieved the defendant of any obligations thereafter (that is, after the date of filing), 11 U.S.C. § 365(g)(1); *In re Fashion World, Inc.,* 49 B.R. 690 (Bankr.D.Mass. 1985). General conclusory statements in the unverified pleadings are insufficient evidence of a real material factual dispute. One of the few facts IMF tells us about the distribution agreement is that IMF was not an exclusive distributor. The Court is given no basis to find that Racal had any duty to IMF. Absent a duty, the Court, by definition, can find no breach.

The Court finds that there are no genuine issues of fact to be determined, and so, the Court will allow the Motion for Summary Judgment on the counts not withdrawn. Motion allowed for Summary Judgment for the defendant on Count II (breach of contract) and Count IV (unfair trade practices), as to which the debtor has not and, apparently, cannot state a set of specific facts which, if proved, would support a cause of action. In Count V (preferential transfers), the Court finds in favor of Racal because IMF is collaterally estopped from proving it was insolvent, a prerequisite for avoiding a transfer. Due to Counts I and III having been withdrawn, no action is necessary.